**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| MARIA T. V., | ) | No. CV 19-10879-PLA |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL, COMMISSIONER | ) | |
| OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**PROCEEDINGS**

Maria T. V.[1] ("plaintiff") filed this action on December 26, 2019, seeking review of the Commissioner's denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on December 31, 2019, and January 24, 2020. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on August 6, 2020, that addresses their positions concerning the disputed

---

[1]    In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

1   issues in the case.  The Court has taken the Joint Submission under submission without oral

2   argument.

3

4                                              II.

5                                        **BACKGROUND**

6           Plaintiff was born in 1956.  [Administrative Record ("AR") at 165.]  She has past relevant

7   work experience as a hand packager (Dictionary of Occupational Title ("DOT") No. 920.587-018).

8   [AR at 27, 53-54.]

9           On February 23, 2016, plaintiff protectively filed an application for a period of disability and

10  DIB alleging that she has been unable to work since January 1, 2015.  [Id. at 21; see also id. at

11  165-68.]  After her application was denied initially and upon reconsideration, plaintiff timely filed

12  a request for a hearing before an Administrative Law Judge ("ALJ").  [Id. at 95-96.]  A hearing was

13  held on November 7, 2018, at which time plaintiff appeared represented by an attorney, and

14  testified on her own behalf with the assistance of a Spanish interpreter.  [Id. at 21, 34-58.]  A

15  vocational expert ("VE") also testified.  [Id. at 53-57.]  On November 30, 2018, the ALJ issued a

16  decision concluding that plaintiff was not under a disability from January 1, 2015, the alleged onset

17  date, through November 30, 2018, the date of the decision.  [Id. at 21-28.]  Plaintiff requested

18  review of the ALJ's decision by the Appeals Council.  [Id. at 163-64.]  When the Appeals Council

19  denied plaintiff's request for review on December 9, 2019 [id. at 1-7], the ALJ's decision became

20  the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810.

21

22                                             III.

23                                   **STANDARD OF REVIEW**

24          Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

25  decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

26  evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622

27  F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

28          "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means

only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

1  468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the

2  second step requires the Commissioner to determine whether the claimant has a "severe"

3  impairment or combination of impairments significantly limiting her ability to do basic work

4  activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has

5  a "severe" impairment or combination of impairments, the third step requires the Commissioner

6  to determine whether the impairment or combination of impairments meets or equals an

7  impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P,

8  appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the

9  claimant's impairment or combination of impairments does not meet or equal an impairment in the

10  Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

11  "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the

12  claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past

13  relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets

14  this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears

15  the burden of establishing that the claimant is not disabled because there is other work existing

16  in "significant numbers" in the national or regional economy the claimant can do, either (1) by

17  the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part

18  404, subpart P, appendix 2.  Lounsbury, 468 F.3d at 1114.  The determination of this issue

19  comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920;

20  Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

21

22  **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

23           At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

24  January 1, 2015, the alleged onset date.[2]  [AR at 23.]  At step two, the ALJ concluded that plaintiff

25  has the severe impairments of right shoulder impingement, status post right shoulder surgery; and

26

27  _____

28  [2]      The ALJ concluded that plaintiff meets the insured status requirements of the Social
        Security Act through September 30, 2021.  [AR at 23.]

1  degenerative disc disease of the cervical and lumbar spine.  [Id.]  At step three, the ALJ

2  determined that plaintiff does not have an impairment or a combination of impairments that meets

3  or medically equals any of the impairments in the Listing.  [Id. at 24.]  The ALJ further found that

4  plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work as defined in

5  20 C.F.R. § 404.1567(c),[4] as follows:

6    [L]ifting up to 50 pounds occasionally and 25 pounds frequently, and sitting, standing
     and/or walking up to six hours in an 8-hour workday, with the following additional
7    restrictions: [she] can only occasionally push and pull with her dominant right upper
     extremity, can only occasionally climb ladders, ropes or scaffolds, can only
8    occasionally crawl, and can only occasionally reach overhead with her dominant,
     right upper extremity.
9

10  [Id.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that

11  plaintiff is able to perform her past relevant work as a hand packager, as generally performed (at

12  the medium level) and as actually performed (at the light level with some of her employers where

13  she did not have to lift).  [Id. at 27, 53-54.]  Accordingly, the ALJ determined that plaintiff was not

14  disabled at any time from the alleged onset date of January 1, 2015, through November 30, 2018,

15  the date of the decision.  [Id. at 28.]

16

17  **V.**

18  **THE ALJ'S DECISION**

19  Plaintiff contends that the ALJ erred when she:  (1) assessed the medical opinions in the

20  record; (2) rejected plaintiff's subjective symptom testimony; and (3) found plaintiff capable of

21  performing her past relevant work.  [JS at 2.]  As set forth below, the Court agrees with plaintiff,

22  in part, and remands for further proceedings.

23

24  [3]  RFC is what a claimant can still do despite existing exertional and nonexertional
    limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
25  three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
    the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,
26  1151 n.2 (9th Cir. 2007) (citation omitted).

27  [4]  "'Medium' work involves lifting no more than 50 pounds at a time with frequent lifting or
    carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that
28  he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

## A.     MEDICAL OPINIONS AND RFC DETERMINATION

### 1.     Legal Standards

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198).  "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198).  When a treating physician's opinion is not controlling, the ALJ should weigh it

---

[5]     The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

1  according to factors such as the nature, extent, and length of the physician-patient working

2  relationship, the frequency of examinations, whether the physician's opinion is supported by and

3  consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see

4  20 C.F.R. § 404.1527(c)(2)-(6).  The ALJ can meet the requisite specific and legitimate standard

5  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

6  stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th

7  Cir. 1998).  The ALJ "must set forth his own interpretations and explain why they, rather than the

8  [treating or examining] doctors', are correct." Id.

9         Although the opinion of a non-examining physician "cannot by itself constitute substantial

10  evidence that justifies the rejection of the opinion of either an examining physician or a treating

11  physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians,

12  psychologists, and other medical specialists who are also experts in Social Security disability

13  evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554

14  F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in

15  determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the

16  claimant's functional limitations).  Reports of non-examining medical experts "may serve as

17  substantial evidence when they are supported by other evidence in the record and are consistent

18  with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

19         An RFC is "an assessment of an individual's ability to do sustained work-related physical

20  and mental activities in a work setting on a regular and continuing basis."  Soc. Sec. Ruling

21  ("SSR")[6] 96-9p, 1996 WL 374184, at *1 (1996).  It reflects the most a claimant can do despite her

22  limitations. See Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996).  An RFC must include an

23  individual's functional limitations or restrictions as a result of all of her impairments -- even those

24  that are not severe (see 20 C.F.R. § 404.1545(a)(1)-(2), (e)) -- and must assess her "work-related

25

26

     [6]   "SSRs do not have the force of law.  However, because they represent the Commissioner's

27  interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs
if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202

28  n.1 (9th Cir. 2001) (citations omitted).

abilities on a function-by-function basis."  SSR 96-9p, 1996 WL 374184, at *1; see also Valentine, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective").  An ALJ errs when she provides an incomplete RFC ignoring "significant and probative evidence." Hill v. Astrue, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the VE is incomplete and, therefore, the ALJ's reliance on the VE's answers is improper).  An RFC assessment is ultimately an administrative finding reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians.  Id. § 404.1545.  A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

### 2.   Opinions of Dr. Bleecker, Dr. Habib, and the Reviewing Consultants

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinions of consultative orthopedic examiner H. Harlan Bleecker, M.D., and of plaintiff's treating physician Shehnaz N. Habib, M.D., who found that plaintiff could perform light work or sedentary work respectively. [JS at 2-3.]  She argues that the ALJ's determination that plaintiff had the RFC to perform medium work, and could lift 50 pounds occasionally and 25 pounds frequently, based as it was on the "great weight" the ALJ gave to the opinions of the State agency reviewing consultants, was not supported by substantial evidence of record.  [Id. at 2-3, 4-5.]

### a.   Dr. Bleecker

In June 2016, Dr. Bleecker, an orthopedic surgeon, performed a consultative comprehensive orthopedic examination of plaintiff. [AR at 301-07.]  Based on his physical

1  examination, and x-rays of plaintiff's cervical spine, lumbar spine, and right shoulder, Dr. Bleecker

2  diagnosed plaintiff with impingement syndrome right shoulder and "[q]uestionable L5 spondylosis."

3  [Id. at 304.]  He opined that plaintiff is able to lift 20 pounds occasionally and 10 pounds frequently,

4  i.e., she is limited to light work, with additional functional limitations.  [Id.]

5      With respect to Dr. Bleecker's opinion, the ALJ noted the following:

6  On June 7, 2016, [plaintiff] presented to H. Harlan Bleecker, M.D., for a consultative
   orthopedic examination at the request of the Social Security Administration.  [She]
7  complained of pain in the right shoulder when she used it, and back pain when
   sitting too long.  On examination, she was observed to sit and stand with normal
8  posture.  She rose from a chair without difficulty.  Her gait was normal, and she
   walked on tiptoes and heels without difficulty, without evidence of weakness in the
9  ankle flexors or extensors.  She was able to get on and off the examining table
   without difficulty.  The range of motion of the neck was diminished on forward flexion
10  and extension.  Backward extension of the spine was slightly reduced, and straight
   leg raising was within normal limits.  The range of motion of the shoulder was within
11  normal limits.  The neurologic examination was intact.  X-rays of the cervical spine
   showed two small calcifications anteriorly at C5-6 and C6-7, and x-rays of the right
12  shoulder evidenced a slightly high-riding humeral head with irregularity of the
   glenoid inferiorly.  There was a prominent medial spike off the acromion status post
13  surgery, and a calcification between the distal end of the clavicle and the acromion.
   X-rays of the lumbar spine showed a questionable L5 spondylosis.
14
   . . . .
15
   On June 7, 2016, Dr. Bleecker opined [plaintiff] was capable of lifting and/or carrying
16  20 pounds occasionally and 10 pounds frequently, sitting six hours in an eight hour
   day, standing and walking six hours in an eight hour day, and occasionally reaching
17  overhead with the right upper extremity.

18  The undersigned does not find this opinion fully persuasive and gives it only partial
   weight.  [Plaintiff] has activities of daily living that show she drives, waters, mops,
19  and does errands including grocery shopping.  Consistent with the findings of Dr.
   Ornsby [sic] who reviewed the medical evidence, Dr. Bleecker's opinion documented
20  normal lumbar rage [sic] of motion, normal posture, gait, normal motor, sensory and
   reflexes with imaging showing only mild lumbar spondylosis.  The examination
21  revealed right upper extremity limits which are accounted for in the above residual
   functional capacity.
22
   Subsequently, upon review of the evidence, a State Agency non-examining
23  consultant opined [plaintiff] was capable of lifting and/or carrying 50 pounds
   occasionally and 25 pounds frequently, sitting about six hours in an eight hour day,
24  standing and walking about six hours in an eight hour day, pushing and pulling 25
   pounds occasionally with the right upper extremity, occasionally climbing ladders,
25  ropes or scaffolds, frequently crawling, and occasional overhead reaching with the
   right upper extremity.  This opinion is consistent with the opinion of Dr. Ornsby [sic].
26
   The undersigned finds this opinion persuasive and gives it great weight.  It is
27  consistent with [plaintiff's] activities of daily living and minimal treatment, but
   considers [her] subjective complaints and the imaging studies.
28

9

1 | [Id. at 25-26 (citations omitted).]

2 |      Plaintiff contends that in rejecting Dr. Bleecker's expert opinion because of plaintiff's

3 | activities of daily living, the ALJ "second-guessed" Dr. Bleecker's opinion and failed to offer any

4 | explanation as to how plaintiff's activities undermined Dr. Bleecker's opinion that plaintiff was

5 | limited to light work.[7]  [JS at 5.]  She also asserts that the ALJ's rejection of Dr. Bleecker's opinion

6 | on the ground that his "examination findings of the spine were within 'normal' limits," cannot

7 | constitute substantial evidence, as Dr. Bleecker's lifting limitations were "well supported by

8 | abnormal imaging studies of the cervical spine, lumbar spine and right shoulder (AR 304), and the

9 | ALJ acknowledged that Dr. Bleecker's 'examination revealed upper extremity limits,' however

10 | made a blanket assertion that she 'accounted' for these limits in her RFC findings, while rejecting

11 | Dr. Bleecker's assessment of Plaintiff's limitations on lifting."  [JS at 5-6.]  Plaintiff further argues

12 | that the ALJ based her rejection of Dr. Bleecker's opinion (that plaintiff was limited to light work)

13 | "on her own lay interpretation of the medical findings, which is not a legally sufficient reason for

14 | rejecting the opinion of an examining physician."  [Id. at 6.]

15 |      Plaintiff argues that Dr. Bleecker's opinions were entitled to "substantially greater weight

16 | than the opinions of non-examining physicians," the medical consultants M. Ormsby, M.D., and

17 | R. Dwyer, M.D., who opined in September 2016 and December 2016, respectively, that plaintiff

18 | was able to perform medium-level work with certain limitations.  [Id. at 7 (citing AR at 26, 65-67,

19 | 79-80).]  She notes that Dr. Bleecker is a specialist in orthopedic surgery, and his opinion

20 | concerning the impact of plaintiff's orthopedic impairments of the spine and right shoulder is

21 | entitled to greater deference than the opinions of the reviewing consultants "whose specialty, if

22 | any, was not stated in the record."  [Id. (citation omitted).]

23 |      Defendant responds that although plaintiff alleges disability since January 2015, she "only

24 |

25 |

26 |

---

27 |    [7]   The Court agrees with plaintiff's arguments and does not find the ALJ's reliance on
plaintiff's daily activities to be a specific and legitimate reason, supported by substantial evidence,
28 | for discounting Dr. Bleecker's opinion.

1  began seeking any treatment in April 2017,"[8] and that, "[e]ven then, her progress reports recorded

2  few abnormal findings," and her treatment record is "remarkably sparse." [Id. at 8.] He contends,

3  therefore, that the ALJ reasonably found that "the opinions most consistent with the objective

4  medical evidence [i.e., the opinions of the State agency reviewing consultants] had the most

5  weight," and met the substantial evidence standard. [Id. at 8-9.] In that respect, defendant notes

6  that there are "four conflicting medical opinions in this case, which widely diverge in their estimate

7  of Plaintiff's functional ability." [Id. at 9.] Dr. Ormsby and Dr. Dwyer, the State agency reviewing

8  consultants, noted that plaintiff's lumbar range of motion was within normal limits, and that she had

9  a negative straight leg raising test; normal posture and gait; normal muscle motor strength; normal

10 sensation; and normal reflexes. [Id. (citing AR at 63).] Although these consultants did note

11 evidence of a previous right shoulder rotator cuff repair and imaging evidence of mild spinal

12 arthritis, based on the medical evidence they opined that plaintiff had the functional ability to

13 perform medium-level work with an additional limitation to occasional right shoulder overhead

14 reaching. [Id. at 10-11 (citing AR at 63, 65-67, 79-80).] Defendant argues that the ALJ reasonably

15 gave Dr. Bleecker's opinion "partial weight" because it was inconsistent with his "mostly normal

16 objective findings upon examination," and inconsistent with plaintiff's reported daily activities. [Id.

17 at 11-12 (citing AR at 26).] Defendant also suggests that if the Court determines the ALJ's

18 reliance on plaintiff's reported daily activities is inconsistent with the standard of review (which it

19 does (see supra note 7)), any such error is harmless, as the ALJ's other reason "would remain

20 valid" and sufficient to meet the standard of review. [Id. at 12 n.6.] Defendant submits that "this

21 is a case in which Plaintiff presented an extraordinarily sparse medical record in support of her

22 claim," and "has not met her burden of proof." [Id. at 13 (citation omitted).]

23

24          **b.      Dr. Habib**

25      In September 2018. Dr. Habib, plaintiff's treating physician since April 2017, completed a

26

27      [8]  The Court notes that there is some indication in the record that plaintiff may have filed for
    Workers' Compensation benefits sometime between 2014 and 2016. [AR at 73-76, 296-98, 308-
28  18.]

1  Physical Residual Functional Capacity Questionnaire ("Questionnaire"), in which she indicated

2  plaintiff was diagnosed with cervical disc degeneration and lumbar spine degeneration, and opined

3  that plaintiff was able to lift up to 10 pounds, i.e., she was limited to sedentary work.  [AR at 319-

4  22.]  Dr. Habib also noted that pushing and/or pulling was affected by plaintiff's impairments and,

5  therefore, that these impairments "limited" her ability to push and/or pull with her upper and lower

6  extremities.  [Id. at 321.]

7        With respect to Dr. Habib's Questionnaire, the ALJ noted the following:

8        On September 11, 2018, Shehnaz N. Habib, M.D., completed a medical source
statement wherein he [sic] noted [plaintiff] had limited range of motion of the cervical
9        and lumbar spine, and she had side effects like drowsiness from her medication.

10       . . . .

11       . . . Dr. Habib . . . opined [plaintiff] was capable of lifting and/or carrying no more
than 10 pounds occasionally, standing and/or walking about two hours in an eight
12       hour day, sitting less than six hours in an eight hour day, and she needed to change
positions due to pain and stiffness and rest three to four hours per day.  He [sic]
13       opined [plaintiff] would be absent from work more than three times a month.  He [sic]
further opined [plaintiff] could never perform postural activities, and occasionally
14       kneel, and she had to avoid cold temperatures, as they were pain-provoking.

15       The undersigned does not find this opinion persuasive and gives it little weight.  Dr.
Habib's findings are not supported by detailed examination findings, and are
16       inconsistent with Dr. Habib's minimal medical records, including generally good
physical examinations without neurological deficits.  This opinion appears to rely on
17       [plaintiff's] subjective complaints with no supportive objective evidence.
Furthermore, he [sic] did not find any reaching limitations or any limitations regarding
18       [plaintiff's] upper extremities, although [she] had consistent complaints of pain in the
right shoulder -- and that appeared to be her primary complaint at the hearing and
19       imaging and all other doctors found severe limitations in the functionality of her
shoulder.   Dr. Habib's failure to mention the shoulder suggests a lack of
20       thoroughness in reaching his [sic] opinion.

21 [Id. at 26-27 (citations omitted).]

22       Plaintiff contends that the ALJ failed to provide any specific and legitimate reason for

23 rejecting the opinion of Dr. Habib, and that the ALJ's reasoning was "factually and legally

24 deficient."  [JS at 6.]  She states that Dr. Habib regularly examined plaintiff during that period, and

25 consistently reported plaintiff's complaints of neck, back, and right shoulder pain, reviewed MRIs

26 of plaintiff's shoulder and cervical spine, and noted clinical findings of "tender cervical spine and

27 lumbar spine, ROM [range of motion] limited to 30 degrees."  [Id. (citing AR at 319, 327).]  Plaintiff

28 argues that Dr. Habib's failure to specifically mention plaintiff's right shoulder impairment in her

1  Questionnaire, "was an inadvertent omission on the part of Dr. Habib, as he [sic] consistently

2  reported Plaintiff's complaints of right shoulder pain, included the right shoulder in his [sic]

3  diagnoses in all progress notes, and [in August 2017] even made a referral to 'ortho/right shoulder

4  rotator cuff near tear.'" [Id. at 6-7 (citing AR at 328).]  Plaintiff contends, therefore, that the ALJ

5  improperly only pointed to those portions of the record that bolstered her findings.  [Id. at 7 (citing

6  Holohan, 246 F.3d at 1207).]  She further argues that Dr. Habib's opinion -- as a treating physician

7  -- was entitled to "substantially greater weight than the opinions of non-examining physicians."

8  [Id.]

9       Defendant responds that Dr. Habib "opined extreme functional limitations and that Plaintiff

10  was essentially unable to do any activities."  [Id. at 12 (citing AR at 319-22).]  He argues that the

11  only objective findings cited to by Dr. Habib to support her opinion, were "tender cervical and

12  lumbar spine" and "range of motion (ROM) limited to 30 degrees."  [Id. (citing AR at 319-21)

13  (internal quotation marks omitted).]  Defendant contends that Dr. Habib "did not explain what part

14  of Plaintiff's body had limitation in range of motion and what the normal range of motion would be

15  expected to measure."  [Id. (citing AR at 319).]  He submits that the ALJ reasonably gave Dr.

16  Habib's opinion "little weight," as her opinion is inconsistent with her treatment records; Dr. Habib

17  saw plaintiff three times a year in 2017 and 2018; and, with the exception of plaintiff's September

18  2018 visit, all of plaintiff's physical examinations revealed no abnormal results.  [Id. at 12-13 (citing

19  AR at 324-30).]  Defendant further states that although Dr. Habib indicated plaintiff was "'limited'

20  in both her upper and lower extremities, [she] provided no actual opinion regarding such functional

21  limitations."[9]  [Id. at 13 (citing AR at 321).]  Defendant agrees with the ALJ's statement, therefore,

22  that this "'suggests a lack of thoroughness' by Dr. Habib that tends to undermine the probative

23  value of his [sic] opinion overall."  [Id. (citing AR at 27).]

24  /

25  ———————————————

26       [9]  The ALJ -- who questioned Dr. Habib's "thoroughness" in preparing her Questionnaire
    because Dr. Habib failed to "mention the shoulder" and "did not find . . . any limitations regarding
27  [plaintiff's] upper extremities" [AR at 27 (emphasis added)] -- herself failed to mention Dr. Habib's
    opinion that plaintiff was limited with respect to pushing and pulling with both her upper and lower
28  extremities as a result of her impairments.  [AR at 321.]

1     **3.**     **Analysis**

2         Based on the above discussion and evidence of record, the Court determines the following:

3 the ALJ erred when she failed to discuss whether or how she considered Dr. Bleecker's orthopedic

4 specialization[10]; the ALJ's reliance on plaintiff's daily activities to discount Dr. Bleecker's opinion

5 was not specific and legitimate and supported by substantial evidence; while the ALJ "accounted"

6 for Dr. Bleecker's limitation to occasional overhead reaching with the right upper extremity, she

7 failed to "account" for his weight limitation to light level work; and, contrary to the ALJ's

8 determination, Dr. Habib did *not* fail to suggest that plaintiff had upper extremity limitations as a

9 result of her impairments -- in fact she specifically noted that pushing and/or pulling would be

10 limited as a result of plaintiff's impairments.  Accordingly, the ALJ's reasons for discounting the

11 opinions of Dr. Bleecker and Dr. Habib were not specific and legitimate and supported by

12 substantial evidence.

13         Moreover, even assuming, *without deciding*, that substantial evidence supports the opinions

14 of the State agency reviewing consultants to which the ALJ gave "great weight,"[11] those

15 consultants both opined that in addition to being limited to only occasional overhead reaching with

16 her right upper extremity (i.e., up to 1/3 of the time), plaintiff should also be limited to occasional

17 pushing and pulling of no more than 25 pounds with her right upper extremity due to her right

18 shoulder impingement. [AR at 63, 66, 79.]  Indeed, as specifically noted by reviewer Dr. Ormsby,

19 Dr. Bleecker's RFC for light work "is suggestive of RUE [right upper extremity] limits only (w/occas

20 OHR [overhead reaching]) . . . .  Therefore, RECOMMEND 1. 50/25 [pounds, lifting and/or carrying

21 frequently/occasionally] w/25 [pound] occas RUE push/pull and RUE OHR . . . ." [Id. at 63.]  On

22 reconsideration, Dr. Dwyer affirmed Dr. Ormsby's recommendations. [Id. at 80, 84.]

23         In her RFC determination, however, the ALJ simply limited plaintiff to occasional (i.e., no

24

25     [10]   As explained in the regulations, when the treating physician's opinion is not given controlling weight, the Administration will "generally give more weight to the medical opinion of a

26 specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c)(5).

27

28     [11]   As noted elsewhere, the reviewing examiners, who issued their reports in 2016, did not have the benefit of reviewing Dr. Habib's later records and Questionnaire.

more than 1/3 of the time) overhead reaching with her right upper extremity and occasional pushing/pulling with her right upper extremity. The ALJ did not specify a weight limit for plaintiff's pushing and pulling, and the Court interprets the ALJ's silence as an assertion that -- *at best* -- plaintiff can occasionally (up to 1/3 of the time) push or pull with her right upper extremity within the same range of weight specified for lifting and carrying that is set forth in the definition of medium work for the hand packager occupation[12] (i.e., 20 to 50 pounds). DOT No. 920.587-018. This determination is not only inconsistent with Dr. Bleecker's and Dr. Habib's opinions limiting plaintiff to light and sedentary work respectively,[13] it is also inconsistent with the recommendations of the reviewing consultants who -- in finding that Dr. Bleecker's RFC recommendation was "overly restrictive" in light of his examination findings and clinical conclusion -- nevertheless interpreted Dr. Bleecker's limitation to light work to be consistent with a limitation to occasional pushing or pulling of *no more than 25 pounds* with the right upper extremity. [See AR at 63.] In fact, *no provider* -- treating, examining, or reviewing -- opined that plaintiff could occasionally push or pull between 25 and 50 pounds with her right upper extremity as determined by the ALJ. Thus, the ALJ improperly ignored, without explanation, significant and probative evidence, favorable to plaintiff, in determining plaintiff's RFC and, therefore, substantial evidence did not support her finding that plaintiff was able to push or pull up to 50 pounds occasionally with her right upper extremity.

Based on the foregoing, the Court determines that the ALJ's stated reasons for discounting

---

[12]  Similarly, the Court interprets Dr. Bleecker's opinion that plaintiff can "lift 20 pounds occasionally, 10 pounds frequently" [AR at 304], and Dr. Habib's opinion that plaintiff can lift up to 10 pounds occasionally and that she would have pushing and/or pulling limitations in her upper extremities, to imply that plaintiff can -- at best -- push or pull within those same weight limits with her right upper extremity.

[13]  The Court again notes that contrary to the ALJ's finding that Dr. Habib "did not find any reaching limitations or any limitations regarding [plaintiff's] upper extremities," although Dr. Habib did not describe the nature and degree of plaintiff's upper extremity pushing/pulling limitations, she did specifically find that pushing and/or pulling were affected by plaintiff's impairments and that she was limited in both her upper and lower extremities in that regard. [AR at 321.] As discussed herein, it is reasonable to assume that Dr. Habib's unspecified upper extremity pushing and pulling limitation would at the very least mirror her finding that plaintiff should no more than occasionally lift or carry ten pounds. [Id. at 320.]

1  Dr. Bleecker's and Dr. Habib's opinions limiting plaintiff to light work (or less) were not specific and

2  legitimate or supported by substantial evidence.  Moreover, it was error for the ALJ to fail to take

3  into consideration the orthopedic surgery specialization of Dr. Bleecker, instead giving greater

4  weight to the conflicting opinions of the State agency reviewing consultants (neither of whom, the

5  Court observes, indicated an area of specialization, and neither of whom had the benefit of

6  reviewing Dr. Habib's records or opinion).  Similarly, the ALJ's reliance on the opinions of the

7  reviewing consultants to which she gave "great weight," without explaining her rejection of their

8  significant and probative opinion that plaintiff should be limited to occasionally pushing or pulling

9  *no more than 25 pounds* with her right upper extremity, was error.  That error rendered the RFC

10  incomplete and, notwithstanding defendant's argument that the ALJ did not need to obtain VE

11  testimony at step four [JS at 25], the hypotheticals posed to the VE were incomplete, and the

12  ALJ's reliance on the VE's answers [AR at 27-28] was thus improper.

13

14  **B.     SUBJECTIVE SYMPTOM TESTIMONY**

15      Plaintiff argues that none of the reasons provided by the ALJ for discounting her subjective

16  symptom testimony is clear and convincing, and defendant counters those arguments.  Because

17  the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand

18  as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also

19  reconsider on remand, pursuant to SSR 16-3p,[14] plaintiff's subjective symptom testimony and,

20  based on her reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for

21  discounting plaintiff's subjective symptom testimony if warranted.  See Trevizo, 871 F.3d at 678

22  n.5; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation

23  omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence

24  _____

25  [14]  The Ninth Circuit in Trevizo noted that SSR 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required:  that assessments of an individual's testimony

26  by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be

27  expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 687 n.5 (citing SSR 16-3p).

28  Thus, SSR 16-3p shall apply on remand.

16

1  undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir.

2  2015) (the ALJ must identify the testimony she found not credible and "link that testimony to the

3  particular parts of the record" supporting her non-credibility determination).

4

5                                           **VI.**

6                        **REMAND FOR FURTHER PROCEEDINGS**

7         The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at

8  682 (citation omitted). Where no useful purpose would be served by further proceedings, or where

9  the record has been fully developed, it is appropriate to exercise this discretion to direct an

10 immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding

11 issues that must be resolved before a determination can be made, and it is not clear from the

12 record that the ALJ would be required to find plaintiff disabled if all the evidence were properly

13 evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

14        In this case, there are outstanding issues that must be resolved before a final determination

15 can be made. In an effort to expedite these proceedings and to avoid any confusion or

16 misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

17 proceedings. First, because the ALJ failed to provide specific and legitimate reasons supported

18 by substantial evidence for discounting the opinions of Dr. Bleecker and Dr. Habib, and for

19 ignoring the findings of the reviewing consultants regarding plaintiff's pushing/pulling limitation with

20 her right upper extremity, the ALJ on remand shall reassess the medical opinions of record,

21 including the opinions of Dr. Bleecker, Dr. Habib, Dr. Ormsby, and Dr. Dwyer. The ALJ must

22 explain the weight afforded to each opinion and provide legally adequate reasons for any portion

23 of an opinion that the ALJ discounts or rejects. Second, the ALJ on remand, in accordance with

24 SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true,

25 or provide specific, clear and convincing reasons, supported by substantial evidence in the case

26 record, for discounting or rejecting any testimony. Finally, if warranted, the ALJ shall reassess

27 plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether

28 plaintiff is capable of performing her past relevant work as a hand packager. If plaintiff is not so

capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 17, 2020

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

18